## CLEVELAND (City), IN RE COMPLAINT AND PETITION OF

Before Public Utilities Commission.

No. 24901.  Decided December 30, 1954.

### OPINION

On June 25, 1954, the city of Cleveland filed with the commission a complaint and petition herein which asked for an annual reduction of not less than $12,000,000.00 in the existing intrastate rates and charges of The Ohio Bell Telephone Company. A number of other cities joined in this complaint and petition.

At the time said petition was filed there was also pending the application for authority to increase rates filed on December 18, 1953 by The Ohio Bell Telephone Company. Said application was designated as Case No. 24517 on the commission's docket.

After holding a preliminary hearing on the status of the complaint and petition herein, the commission consolidated this matter with Case No. 24517 for the purposes of hearing only. Such hearings were resumed on June 28, 1954, and continued from time to time thereafter, the final argument being concluded and the respective briefs submitted as of October 15, 1954.

On this 30th day of December, 1954, the commission by order granted with some modification the authority sought by The Ohio Bell Telephone Company to increase rates in Case No. 24517 (56 O.O. 288). In view of this order and the finding therein which findings are adopted herein this complaint and petition should be denied.

It is, therefore, ordered that the complaint and petition be dismissed.

MARTIN and WINTER, commissioners, concurring.

### CONCURRING OPINION

By MOULTON, chairman.

Although I agree with the majority that the application of the cities for a reduction of $12,000,000 annually in the present rates should be denied, it necessarily follows from my dissent in the rate case that I concur for different reasons.

The rates which the cities seek to have reduced were established and went into effect September 1, 1952 by an order of the commission to which no exception was taken. While in testing the reasonableness of the rate increase applied for by the company in the rate case we were required to use the test period of one year ending on the date certain of July 1, 1953, the fact is that in this proceeding which is in the nature of a complaint against existing rates and was filed on June 25, 1954, we have a right and no doubt a duty, to examine into the existing facts obtainable as of the most recent date. There is no doubt that since the date certain in the rate case, i. e., since July 1, 1953, the company has sustained increases in its cost of operation. Francis E. Mott, a witness for the company, testified (T. R. page 2255) that Ohio Bell is in the process of negotiating with the C. W. A., the labor union representing its nonmanagement employees, and that the company has made an offer to the union the effect of which would be to increase annual salaries by $1,800,000. Witness Mott further testified that since July 1, 1953 and through July 30, 1954, the company has added plant in the value of $30,428,000. Witness Sperling for the company testified that it is estimated that gross plant amounting to $102,000,000 will have been added to the telephone plant in service during the years 1953 and 1954.

Thus, with increased costs and additional investment in plant since the date certain, there is an element of attrition at work which operates to reduce the earnings subsequent to the test period for which they have been established. This factor must be recognized in a proceedings of this nature wherein it is sought to reduce existing rates. In my opinion it is most important that nothing be done which would in any way hinder or impair the construction program of Ohio Bell which has been designed to meet and keep pace with the constantly increasing demands for service that are made upon it. It is going forward we understand

in 1955, with a $58,000,000 expenditure on new plant. From September 1, 1945 to the end of 1953, 907,563 telephones were added to the Ohio Bell System—a growth of approximately 83% in a little over eight years. At the end of 1953 there were only 3,247 applications for service which were not filled and only 31 of these were over six months old while at the end of World War II there were over 100,000 applicants waiting for service. These facts demonstrate that the company has been alert to its responsibilities as a public utility and that it plans for the future contemplate a continued expansion of facilities to meet its increased demands.

As I have indicated in my opinion in the rate case, I believe present revenues are sufficient to keep the company in a sound economic position and that the existing level of income will permit it to continue with its expansion program. Considering the attrition factor, it is my opinion that a reduction in rates at this time of $12,000,000 annually as requested by the city of Cleveland and other cities, would imperil the construction program which the company is carrying on and endanger the financial soundness of the company.

It will be noted by reference to my opinion in Case No. 24517 that I believe the present rates to be adequate and sufficient to maintain the company in a sound financial position. I held that the application for an increase in rates should be denied but I did not say nor do I believe that the present rates are excessive or unreasonable, and the various tests which I applied in my judgment demonstrate that fact. The rate of return produced by the present rates on an RCN base is not excessive either on the basis of the all equity capital structure of the company or on the basis of an assumed debt of 33-1/3%.

It is my opinion that if the commission would have denied the company's application for an increase in rates along with its refusal of the cities' request for a reduction in existing rates that substantial justice would have been accomplished and that the result therefrom would be fair and equitable to both the company and to its subscribers.